ORIGINAL
b:F
C/M

```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------x
```
CONSTANCE ZERVAS,

        Plaintiff,

-against-

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

```
------------------------------------------------x
```

**MEMORANDUM AND ORDER**
Case No. 05-CV-2133 (FB)

*Appearances:*
*For the Plaintiff:*
JOSEPHINE GOTTESMAN, ESQ.
24 Commerce Street, Suite 1427
Newark, New Jersey 07102

*For the Defendant:*
ROSLYNN R. MAUSKOPF, ESQ.
United States Attorney
Eastern District of New York
By: KAREN T. CALLAHAN, ESQ.
Assistant United States Attorney
147 Pierrepont Street
Brooklyn, New York 11201

**BLOCK, Senior District Judge:**

        Plaintiff, Constance Zervas ("Zervas"), seeks review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits ("DIB"). Pursuant to Federal Rule of Civil Procedure 12(c), the parties cross-move for judgment on the pleadings. For the reasons set forth below, the Commissioner's decision is affirmed; accordingly, her motion for judgment on the pleadings is granted and Zervas's complaint is dismissed.

I.

        The following facts are taken from the Administrative Record ("A.R."):

In 1994, Zervas was laid off from her job as a data-entry clerk. After intermittently (and unsuccessfully) seeking other employment, she applied for DIB on August 3, 1998, alleging that she had been disabled since December 31, 1994, due to carpal tunnel syndrome, tendonitis and pain in her elbows and fingers; she later amended her application to allege that she also suffered from depression.

After her application was denied at the initial and reconsideration stages, Zervas requested a hearing before an ALJ. The ALJ's decision, which was unfavorable to Zervas, was vacated and remanded by the Commissioner's Appeals Council. On remand, the ALJ again rendered an unfavorable decision, which was again vacated and remanded; in its second remand, the Appeals Council reassigned the case and directed the new ALJ to more fully consider "work-related limitations of a mental nature," as well as "manipulative limitations" caused by Zervas' physical impairments. A.R. at 415-18. Following a hearing, the new ALJ rendered a written decision on February 13, 2006.

In her February 13th decision, the ALJ found that Zervas was insured for DIB through December 31, 1999; she then turned to the issue of whether Zervas was disabled as of that date. Applying the familiar five-step process, the ALJ first found that Zervas had "not engaged in substantial gainful activity since her alleged onset date." *Id.* at 170.

The ALJ then evaluated Zervas's claimed impairments, noting that "[t]he medical evidence reveals impairments including depression with anxiety and panic attacks, preoccupation with her financial condition as well as carpal tunnel syndrome and DeQuervain's tenosynovitis [inflammation of the area around the tendons controlling the thumb]." *Id.* The ALJ concluded that Zervas's physical impairments were severe, but

2

found that her mental impairments "were not severe within the meaning of the Social Security Act and Regulations" because they had "no more than a de minimis impact on her functioning. The claimant had, at most, only mild limitations in her activities of daily living, social functioning, concentration, persistence and pace." A.R. at 170.

Despite her conclusion that Zervas's mental impairments were not severe, the ALJ recognized that "all of the claimant's medically determinable impairments [i.e., whether severe or not] must be considered in the remaining steps of the sequential analysis." The ALJ nevertheless found that "[a]ll of the claimant's impairments, considered singly and in combination, were not 'severe' enough to meet or medically equal one of the impairments [considered *per se* disabling by the Commissioner's regulations]." *Id.*

The ALJ next addressed Zervas's residual functional capacity ("RFC"). In that regard, the ALJ found that, despite her impairments, Zervas could "perform simple work that did not require continuous and rapid, repetitive hand and arm activities," that she "was functionally capable of lifting and carrying twenty pounds, sitting six hours in an eight hour workday, standing six hours in an eight hour workday and walking several blocks," and that she "was to avoid locations with [a] large visual motor component or numeric/computational skills and would need a vocation that is people-oriented and verbally interactive." *Id.* at 176, 180. Applying that RFC, the ALJ found that Zervas was unable "to perform her past relevant work as a data entry clerk," but that "she was capable of making a successful adjustment to work that exists in significant numbers in the national economy." *Id.* at 180-81.

Based on the foregoing findings, the ALJ concluded that Zervas was "not

3

under a 'disability,' as defined in the Social Security Act, at any time through December 13, 1999." *Id.* at 182. On May 22, 2006, the Appeals Council affirmed the ALJ's decision, thereby rendering the Commissioner's decision to deny benefits final. Zervas timely sought judicial review.[1]

## II.

"In reviewing the final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

Zervas challenges the Commissioner's decision on three grounds. First, she argues that the ALJ's finding that she did not suffer from any severe mental impairments on or before December 31, 1999, was not supported by substantial evidence. Second, she argues that the ALJ failed to account for her mental impairments, whether severe or not, and her complaints of pain in determining her RFC. Third, she argues that there was not substantial evidence to support the ALJ's finding that she could lift and carry up to 20 pounds. The Court addresses those arguments in turn.

---

[1] In fact, Zervas filed the present action between the second remand and the third ALJ hearing, arguing that excessive delay excused her from having to pursue the administrative process to completion. The Commissioner moved to dismiss the action as premature, but withdrew the motion upon the issuance of the Appeals Council's May 22nd decision.

4

## A. Severity of Mental Impairments

Notwithstanding Zervas' argument to the contrary, the ALJ's finding that she did not suffer from any severe mental impairments was supported by substantial evidence, namely the opinions of (1) examining consultative physician Dr. Herbert Meadow, who opined that Zervas was only "mildly depressed," A.R. at 505; (2) non-examining consultative physician Dr. N. Shliselberg, who agreed that Zervas suffered from depression and panic attacks, but opined that she was "not significantly limited" by those impairments, *id.* at 511; and (3) testifying medical expert Dr. Edward Halperin, who opined that Zervas's depression and panic disorder imposed only "mild restrictions." *Id.* at 101-02.

Zervas argues that the ALJ was not entitled to rely on this evidence in the face of the contrary opinion of Dr. Lowell Anderson, a psychologist who saw Zervas six times between April and May of 2002. In a May 2002 evaluation, Dr. Anderson opined that Zervas suffered from generalized persistent anxiety, social phobia, agoraphobia, and panic attacks; and that these impairments caused "marked" or "extreme" difficulties in (1) daily living, (2) social functioning, and (3) concentration, persistence and pace, to the point that she "can not work or seek work." A.R. at 640. Although Dr. Anderson did not treat Zervas during the period she was insured for DIB, he stated in an August 2002 letter that "Ms[.] Zervas clearly stated that her emotional difficulties began when she lost her job in July of 1994," and that he had "no reason to doubt this recollection[.]" *Id.* at 663. Zervas argues that Dr. Anderson's opinion established not only that she suffered from severe mental impairments before December 31, 1999, but that those impairments qualified as *per se* disabling under the Commissioner's regulations. *See* 20 C.F.R. pt. 404, subpt. P, app. 1 §

5

12.06 (defining criteria for anxiety-related disorders).

Under the well-established "treating source rule," the opinion of a treating source as to the severity of a claimant's impairment is to be given "controlling weight" as long as the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." *Schaal v. Apfel*, 134 F.3d 496, 503 (2d Cir. 1998) (quoting 20 C.F.R. § 404.1527(d)(2)). When, as here, a treating source retrospectively opines about a claimant's condition before treatment began, a variant of the rule applies: "[W]hile a treating physician's retrospective diagnosis is not conclusive, it is entitled to controlling weight unless it is contradicted by other medical evidence or overwhelmingly compelling non-medical evidence." *Byam v. Barnhart*, 336 F.3d 172, 183 (2d Cir. 2003) (citing *Rivera v. Sullivan*, 923 F.2d 964 (2d Cir. 1991), and *Wagner v. Secretary of Health & Human Servs.*, 906 F.2d 964 (2d Cir. 1991); internal quotation marks omitted).

Dr. Anderson's retrospective opinion that Zervas began suffering from severe mental impairment in 1994 was, as noted above, contradicted by the opinions of Drs. Meadow, Shliselberg and Halperin. Given this medical evidence, the ALJ was not obliged to give his opinion controlling weight.

Where a treating source's opinion is not given controlling weight, it must nevertheless be evaluated according to specific regulatory criteria, *see* 20 C.F.R. § 404.1527(d)(2-6); regardless of the weight accorded, the ALJ must give "good reasons" for the weight given to a treating source's opinion. *Id.* § 404.1527(d). Here, the ALJ's

written decision included a lengthy discussion of the weight to be given Dr. Anderson's opinion: The ALJ noted (1) that Dr. Anderson did not begin treating Zervas until 2002, (2) that his treatment consisted of only six visits, (3) that he did not perform any mental status examinations, and (4) that his opinion was inconsistent with other evidence (including the opinions of Drs. Meadow, Shliselberg and Halperin).

The ALJ also rejected Dr. Anderson's opinion because it was based entirely on Zervas's self-report, which the ALJ found not credible. Zervas argues that the ALJ's assessment of her credibility improperly relied on the fact that she had not sought further treatment or medication for her claimed mental impairments; in support of that argument, she relies on Social Security Ruling ("SSR") 82-59. As the Commissioner correctly points out, however, SSR 82-59 concerns the failure to follow prescribed medical treatment where (1) a claimant has already been determined to be disabled, and (2) the prescribed treatment would restore claimant's ability to work.

The relevant SSR is SSR 96-7p, which provides that a claimant's "statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed." Under that ruling, an ALJ must not draw an adverse inference from a claimant's failure to seek or pursue treatment "without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." *Id.* Although Zervas contends that she did not pursue treatment due to a fear of taking medication and lack of money, the record reflects that the ALJ was well within

7

her rights in rejecting both explanations: Zervas testified that she was taking medication for high blood pressure, and that "she knew that she had the option of using Medicaid or using her [$35,000] Worker's Compensation settlement to pay for medical care if she felt it was needed." A.R. at 175. Moreover, as the ALJ recognized, there were other reasons to doubt Zervas's self-report: She was able to live independently, take public transportation, and even seek employment during the period she claimed to have been totally disabled; perhaps most poignantly, she told her primary-care physician that she "wishe[d] to be determined to be totally disabled." *Id.* at 696. Taken as a whole, the record supports the ALJ's determination that Zervas's claims of the severity of her mental impairments were not credible.

As Zervas points out, Dr. Anderson's opinion was consistent with other evidence, namely the reports of social worker Susan Noble, rehabilitation expert Rosalind Zuger, consultative psychiatrist Dr. Roger Rahtz and Dr. Gus Papapetrou, a psychologist who evaluated Zervas for the New York State Office of Vocational and Educational Services for Individuals with Disabilities ("VESID"). Unlike Dr. Anderson, however, none of these four was a treating source; therefore, their opinions were not entitled to any particular weight. Moreover, Noble and Zuger were not "acceptable medical sources" under the Commissioner's regulations. *See* 20 C.F.R. § 404.1513(a)(1-5) (listing medical doctors, psychologists, optometrists, podiatrists and speech pathologists as acceptable medical sources). In any event, since, as explained, there was substantial evidence supporting the ALJ's finding, her decision must be upheld "even if there is also substantial evidence supporting plaintiff's claim." *Mendez v. Barnhart*, 2007 WL 186800, at *7 (S.D.N.Y.

8

Jan. 23, 2007) (citing *DeChirico v. Callahan*, 134 F.3d 1177 (2d Cir. 1998)).

## B. Non-Exertional Limitations

Zervas's claim that the ALJ did not factor her mental impairments and complaints of pain into her RFC is belied by the ALJ's unequivocal statement that, whether "severe" or not, "*all* medically determinable impairments must be considered in the remaining steps of the sequential analysis," A.R. at 170 (emphasis added); in light of her recognition that "[t]he medical evidence reveals impairments including depression with anxiety and panic attacks," *id.*, it is clear that the ALJ considered mental impairments as well as physical impairments. Since, however, the ALJ concluded that the mental impairments "were only mild in severity and had not more than a de minimis impact on [Zervas's] overall functioning," *id.* at 175 – a conclusion that was, as explained above, based on the correct legal standards and substantial evidence – she appropriately determined that they had no bearing on Zervas's RFC. Moreover, the ALJ did include mental limitations in the RFC; relying on Dr. Papapetrou's assessment, she concluded that Zervas "was to avoid locations with [a] large visual motor component or numeric/computational skills and would need a vocation that is people-oriented and verbally interactive." *Id.* at 180.

The ALJ also took pain into account in determining Zervas's RFC, concluding that she "should avoid continuous repetitive hand and arm activities." *Id.* While Zervas argues that her subjective complaints of pain were more severe, the ALJ found that "[a]llegations of disabling pain and functional limitations as described by the claimant . . . are grossly exaggerated and inconsistent with the record herein as well as her own testimony regarding the nature of her treatments." *Id.* at 179. As noted above, there were

9

many reasons to doubt Zervas's credibility; the ALJ was entitled to take these reasons into account in deciding to accord Zervas's complaints of pain little weight. *See* 20 C.F.R. § 404.1529(c)(3)(i)-(iv) (when claimant alleges pain that exceeds objectively verifiable evidence, ALJ must consider several factors, including daily activities, medication, and causes of pain, in order to determine the extent to which pain affects claimant's capabilities).

## C. Exertional Limitations

With respect to exertional limitations, Zervas argues that the ALJ's finding, reflected in the RFC, that Zervas could lift and carry approximately 20 pounds is not supported by substantial evidence. Examining consultative orthopedist Dr. Kyung Seo opined that "claimant is able to sit approximately six hours in an eight hour working period, able to stand approximately six hours with frequent rest, able to walk several blocks and *able to lift and carry approximately 20 lbs.*" A.R. at 534 (emphasis added). Testifying medical experts Dr. Richard Goodman and Dr. Theodore Cohen also opined that someone with Zervas' physical impairments could frequently lift up to 20 pounds.

Zervas argues that Dr. Seo's opinion was contrary to the opinions of treating physicians Dr. Phyllis Marino and Dr. D. Milek. While both Dr. Marino and Dr. Milek recommended physical therapy and other conservative treatment for Zervas' physical impairments, neither specifically opined that she was unable to lift up to 20 pounds. In any event, the treating physician rule applies only to diagnoses of the nature and severity of a claimant's impairments; it does not apply to opinions about the claimant's RFC. *See Gagnon v. Barnhart*, 210 F. Supp. 2d 111, 121 (D. Conn. 2002) ("The Commissioner will not

give enhanced weight to a treating physician's opinion as to the claimant's RFC." (citing 20 C.F.R. § 404.1527(e), SSR 96-5p)).

Zervas also argues that the opinion of a consulting physician like Dr. Seo may not, as a matter of law, constitute substantial evidence. While the opinion of a consulting physician cannot generally supply the evidence necessary to overcome a treating physician's diagnosis of the nature or severity of the claimant's impairment, *see, e.g., Green-Younger v. Barnhart*, 335 F.3d 99, 107-08 (2d Cir. 2003) (ALJ could not disregard treating physician's diagnosis based on inconsistent opinions of one examining and two non-examining consulting physicians), that rule does not apply here because, for the reasons explained, the treating physician rule does not apply. That being the case, it is clear that a consulting physician's opinion regarding a claimant's RFC may constitute substantial evidence. *See, e.g., Copeland v. Commissioner of Soc. Sec.*, 2006 WL 2095722, at *5 (E.D.N.Y. July 27, 2006) ("[The ALJ's] finding regarding Copeland's non-exertional limitations is supported by substantial evidence, namely, Silverberg's consultative opinion[.]").

### III.

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings is granted, her final decision to deny DIB is affirmed and Zervas's complaint is dismissed.

**SO ORDERED.**

/signed/
_____
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
April 26, 2007